UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11605-RWZ

ELIZABETH TYREE

v.

RAY H. LAHOOD

MEMORANDUM OF DECISION

April 29, 2013

ZOBEL, D.J.

Plaintiff Elizabeth Tyree is a black Hispanic woman. In February 2011, she was terminated from her position in the Federal Career Internship Program at the John A. Volpe National Transportation Systems Center ("Volpe Center"), part of the U.S. Department of Transportation. The Volpe Center subsequently failed to complete a Cooperative Research and Development Agreement ("CRADA") that would allow Tyree to use her Volpe Center research to complete her graduate degree. It also failed to provide Tyree with any letter of reference regarding her employment there.

Tyree contacted an Equal Employment Opportunity ("EEO") counselor in August 2011; she then proceeded with a complaint before the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued her a right-to-sue letter in June 2012, and Tyree then filed this suit. Tyree claims that the Volpe Center discriminated against her on the basis of her race, national origin, and gender in terminating her and in failing to

complete a CRADA for her. She also claims that the Volpe Center retaliated against her for reporting the discrimination by denying her a letter of reference.

Defendant Ray H. LaHood, named in his official capacity as Secretary of the U.S. Department of Transportation,[1] now moves to dismiss Tyree's complaint for failure to state a claim.

**I.     Background**[2]

Tyree first encountered Volpe Center representatives at a Worcester Polytechnic Institute ("WPI") career fair in the fall of 2008. The Volpe Center eventually hired Tyree as a career intern doing research in aerospace engineering; she began work there in February 2009.

At the same time that she was working at the Volpe Center, Tyree was also pursuing a master's degree at WPI. The Volpe Center helped fund Tyree's tuition at WPI through various training funds and fellowship programs.

In November 2010, Tyree received a negative performance review from her supervisors Michael Geyer and Frank Wang. Tyree challenged that negative review and asked Geyer for an explanation. Geyer responded that no one had come to him and told him that Tyree was doing good work, and went on to compare Tyree unfavorably to one of her male colleagues. Wang also compared Tyree unfavorably to

---

[1] See 42 U.S.C. § 2000e-16(c).

[2] As appropriate on a motion to dismiss, the facts here are given as alleged in the complaint. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 4 (1st Cir. 2011). As Tyree is proceeding pro se, her complaint "is to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Fed. R. Civ. P. 8(e).

a different male colleague. Tyree told Geyer and Wang that she had received positive feedback in writing from other colleagues for her work on various projects, and that the male employees to which they were comparing her had different duties and different roles in the organization.

In early 2011, Tyree received notice from the Volpe Center that she would be terminated effective two weeks later. Concerned about her academic career, Tyree asked Geyer whether she would be able to continue using her research with the Volpe Center towards her master's degree. Geyer told Tyree that the Volpe Center could put together a CRADA contract with WPI that would allow Tyree to use her Volpe Center research data in the WPI program. Geyer also agreed to give Tyree a letter of reference regarding her employment at the Volpe Center, and told her to write up a first draft of that letter and email it to him.

Shortly thereafter, Tyree met with Geyer, Wang, and a lawyer for the Volpe Center to discuss the proposed CRADA. Tyree learned that the CRADA required a document called a Statement of Work ("SOW"), which Geyer instructed her to draft and email to Wang.

Tyree's employment ended on February 11, 2011. She sent Geyer a draft letter of reference on that day, and sent both Geyer and Wang a draft SOW five days later.

Tyree did not immediately receive any letter of reference from Geyer. On February 24, she emailed Geyer to ask about the status of the letter, but heard no response. On April 1, she visited the Volpe Center in person and spoke with Geyer about the letter of reference; he responded that he would get it done soon.

3

Meanwhile, over the spring and summer of 2011, Wang "strongly resist[ed] and [was] extremely reluctant to work[] on the SOW and mov[e] it toward completion." Docket # 1 (Compl.) ¶ 33. Because the SOW was not completed, the Volpe Center never began drafting the CRADA, and so Tyree was unable to move forward on her research during this time period.

On July 21, 2011, Tyree learned from her WPI advisor that a SOW should normally take only a few days to complete, rather than the nearly five months that she had already waited. At this point, Tyree "realized that because of her race, gender, and/or ethnicity the Defendant never had any inten[t]ions of completing the SOW or the CRADA and her termination was wrongful." Compl. ¶ 35.

On August 10, Tyree contacted an EEO counselor to discuss the alleged discrimination. She then filed an administrative complaint of discrimination with the EEOC; the EEOC issued her a right-to-sue letter in June 2012, after which she filed this civil action. Her complaint alleges unlawful discrimination based on her termination and on the failure to complete the SOW and CRADA; in addition, it alleges that Geyer unlawfully withheld her letter of reference in retaliation against her for reporting this discrimination. LaHood now moves to dismiss the complaint for failure to state a claim.

## II.    Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). If the complaint fails to state a plausible claim upon

4

which relief can be granted, it must be dismissed. Id.

### III. Analysis

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, prohibits discrimination in federal employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16(a). It also prohibits retaliation against employees who oppose unlawful employment discrimination. Id. § 2000e-3(a); Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011); see also 29 C.F.R. § 1614.101(b). Here, Tyree alleges both discrimination and retaliation based on a number of different events.

#### A. Discrimination in Termination

First, Tyree alleges that she suffered discrimination when she was terminated from her employment at the Volpe Center. LaHood moves to dismiss this claim on the ground that Tyree failed to contact an EEO counselor within forty-five days after her termination.

Federal employees who believe they have been unlawfully discriminated against must contact an EEO counselor within forty-five days after the discriminatory action takes effect, or their claim will be barred for failure to exhaust administrative remedies. 29 C.F.R. § 1614.105(a)(1); Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000). Tyree's termination took effect on February 11, 2011; however, she did not contact an EEO counselor until August 10, well after the forty-five day deadline had expired. She therefore cannot sue for discrimination based on her termination.

Tyree correctly notes that the forty-five day rule is not jurisdictional, meaning

5

that it can be overcome by waiver, equitable tolling, or equitable estoppel. But she presents no persuasive reason for applying any of these doctrines to her case.

Tyree argues that equitable estoppel should apply because the Volpe Center misled her by falsely representing it would execute a CRADA so that she could continue her research. But equitable estoppel is only appropriate where "an employee is aware of her Title VII rights but does not make a timely filing 'due to [her] reasonable reliance on [her] employer's misleading or confusing representations or conduct.'" Vera v. McHugh, 622 F.3d 17, 29-30 (1st Cir. 2010) (alterations in original) (quoting Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752 (1st Cir. 1988)). That is not this case. The complaint here does not allege that Tyree refrained from contacting an EEO counselor in February because she was relying on getting a CRADA; instead, it alleges she simply did not realize until July that her termination was discriminatory. In other words, as pleaded in the complaint, Tyree's delay in contacting a counselor about her termination was not caused by reasonable reliance on any misrepresentation by the Volpe Center. Equitable estoppel therefore is not available.

To the extent Tyree asserts she could not have known the termination was discriminatory until she also saw the alleged post-termination discrimination, that argument also fails. At the time she was terminated, Tyree had already gone through the negative performance review in November 2010 that she cites in her complaint as evidence of discrimination. She was therefore on inquiry notice regarding the potential discrimination at that point. See Jensen v. Frank, 912 F.2d 517, 521 (1st Cir. 1990) ("Not knowing every detail of a suspected plot cannot excuse a discharged employee

6

from sleeping upon [her] rights.").

Finally, Tyree argues that she contacted the EEO counselor within forty-five days after receiving a draft SOW from Wang on July 17, 2011. No facts about that draft SOW are alleged in the complaint. Even if they were, Tyree's termination was a discrete act, separate from the Volpe Center's failure to approve the SOW and implement the CRADA. Tyree therefore cannot connect the two into a single continuing violation. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). That means Tyree cannot use the CRADA-based claim to make the termination-based claim timely.

Tyree's Title VII claim for unlawful termination must therefore be dismissed for failure to contact an EEO counselor within forty-five days after the termination took effect.

**B.     Discrimination in Failing to Pursue a CRADA**

Tyree's second claim is that the Volpe Center discriminated against her by refusing to set up a CRADA that would allow her to continue her research. LaHood opposes this claim on several grounds.

First, LaHood argues that Title VII ceased to protect Tyree when she was terminated, because at that point she was no longer a federal employee. That argument plainly fails, since "Title VII protects both current and former employees from discriminatory adverse employment actions." Gerner v. Cnty. of Chesterfield, 674 F.3d 264, 268 (4th Cir. 2012).

Second, LaHood argues that the Volpe Center's failure to provide a CRADA was

7

not an adverse employment action. Title VII does not protect against all possible discrimination in the workplace; instead, it reaches only materially adverse employment actions. See Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). Such actions include demoting or firing an employee, refusing promotions, assigning disadvantageous work, reporting negative performance evaluations, tolerating harassment by other employees, and other material acts of that nature. See Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002). LaHood argues that Tyree did not suffer an adverse employment action when the CRADA was denied because the CRADA "would not have extended or otherwise affected [Tyree's] employment status." Docket # 18 (Mem. Supp. Mot. Dismiss) at 7. In other words, Tyree would remain terminated from her job at the Volpe Center whether or not the CRADA was signed.

But the concept of adverse employment action is not as limited as LaHood would have it. Denying severance benefits to a terminated employee is clearly an adverse employment action, even though the employee will remain terminated with or without her benefits. Cf. Gerner, 674 F.3d at 267 (reversing dismissal of a Title VII claim based on discriminatory denial of severance benefits, and noting that "[c]ourts have consistently recognized that the discriminatory denial of a non-contractual employment benefit constitutes an adverse employment action" (emphasis omitted)). Here, Tyree alleges that the Volpe Center essentially denied her an important termination-related benefit by failing to execute the CRADA. That adverse action as pleaded is sufficiently material to state a Title VII claim.

LaHood argues further that the harm Tyree alleges is purely speculative,

because the CRADA might not have been successful for other reasons. For instance, WPI might have rejected the CRADA, or the research project might simply have failed. But that argument is premature at this stage of the litigation. Tyree has plausibly alleged that she was unable to complete her research and obtain her master's degree because the Volpe Center denied her the necessary CRADA; no further showing of harm is required to defeat the motion to dismiss.

Tyree's claim that the Volpe Center discriminated against her by failing to execute the CRADA therefore survives.

### C. Breach of Contract

Generously construed, the complaint might be read to assert a breach of contract claim based on the failure to execute the CRADA. However, Tyree explains in her opposition that she is not asserting any contract claim with respect to the CRADA. Any such claim is therefore waived.

### D. Retaliation

According to the complaint, Tyree has yet to receive any letter of reference from the Volpe Center. She alleges that Geyer has continued to withhold the letter in retaliation for her exercise of her Title VII rights.

LaHood moves to dismiss this retaliation claim on several grounds. First, he argues that Title VII does not protect federal employees against retaliation, citing two recent cases that explicitly left that question open. See Gomez-Perez v. Potter, 553 U.S. 474, 488 n.4 (2008); Roman v. Potter, 605 F.3d 34, 39 (1st Cir. 2010). He fails to note, however, that since those cases the First Circuit has explicitly reaffirmed that Title

9

VII retaliation claims by federal employees remain available. See Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011). That authority controls.

Second, LaHood argues that Tyree did not raise her retaliation claim with the EEOC, and that there is no related discrimination claim that could excuse the failure to exhaust the retaliation claim. See Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 86-87 (1st Cir. 2008). The argument fails because, as discussed above, Tyree has a viable discrimination claim based on the Volpe Center's failure to complete the CRADA.

Third, LaHood argues that the failure to issue a letter of reference is not an adverse employment action. In the retaliation context, a material adverse employment action is one that might have dissuaded a reasonable employee from making a discrimination claim. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-69 (2006). LaHood argues that an employer would not dissuade a reasonable employee from reporting discrimination by denying a letter of reference, and that any harm to Tyree from losing the letter of reference is purely speculative. Those contentions contradict the facts alleged in the complaint, which describes in some detail how Tyree's career search has been harmed by the fact that she cannot provide any letter of reference for her previous two years of employment. At this early stage, Tyree's allegations are sufficient to show both that withholding a letter of reference is a material adverse action and that she was in fact harmed by that action.[3]

---

[3] LaHood also argues that employers are not legally or contractually required to provide letters of reference. That is immaterial; the denial of non-contractual benefits can still constitute an adverse employment action. Gerner, 674 F.3d at 267.

Fourth, LaHood argues that Tyree has failed to show causation because the Volpe Center began withholding the letter of reference before Tyree reported the alleged discrimination. That argument is persuasive. Tyree first emailed Geyer a draft letter of reference on February 11, 2011, when she was terminated; she then followed up with him on February 24, and again on April 1. However, she did not contact an EEO counselor to report the alleged discrimination until August 10, and she did not file a formal complaint with the EEOC until after that. Tyree does not explain why she believes the letter of reference was withheld in retaliation for her protected conduct when the letter had already been withheld for several months before that conduct occurred. As pleaded, the complaint fails to provide any plausible reason to believe that the Volpe Center withheld Tyree's letter of reference because she reported discrimination. See Munoz v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R., 671 F.3d 49, 56 (1st Cir. 2012) ("Absent special circumstances not present here, an adverse employment decision that predates a protected activity cannot be caused by that activity.") Tyree's retaliation claim is therefore dismissed.

### E. Discrimination in Training Program Termination

In her opposition, Tyree claims that she remained in a federal training program after her termination from the Volpe Center, but that she was abruptly terminated from that training program after she contacted the EEO counselor. However, the complaint does not include any factual allegations about Tyree's termination from the training program. Tyree has therefore failed to state any discrimination claim on that basis

## IV. Conclusion

LaHood's motion to dismiss (Docket # 17) is ALLOWED IN PART AND DENIED IN PART. Tyree's claim that the Volpe Center discriminated against her by failing to execute the CRADA shall proceed; all other claims are DISMISSED WITHOUT PREJUDICE.

Tyree's motion to strike LaHood's reply (Docket # 25) is DENIED; however, her motion to file a surreply is ALLOWED and her surreply has been considered. Tyree's motion to file a reply regarding the motion to strike (Docket # 28) is DENIED AS MOOT.

|     April 29, 2013     | /s/Rya W. Zobel |
|------------------------|-----------------|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |