UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
ELIZABETH TYREE,                                   )
                                                              )
                            Plaintiff,                      )
                                                              )
              v.                                              )          C.A. No. 12-11605-RWZ
                                                              )
RAY H. LAHOOD, *Secretary,*                    )
*U.S. Department of Transportation*,          )
                                                              )
                            Defendant.                   )
_____  )

## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

This is a *pro se* employment discrimination case brought under Title VII.  Plaintiff has

moved to compel the Defendant to:

- Respond to Plaintiff's Interrogatory Nos. 1-5;

- Produce documents in response to Plaintiff's First Request for Production of
  Documents (1 request);

- Produce documents in response to Plaintiff's Second Request for Production of
  Documents (4 requests);

- Produce documents in response to Plaintiff's Third Request for Production of
  Documents (6 requests); and

- Respond to Plaintiff's Fourth Request for Production of Documents (3 requests).

Plaintiff's motion should be denied because none of the disputed information or documents is

relevant to Plaintiff's single claim or Defendant's defenses thereto.  Moreover, Plaintiff was

permitted only two separate Requests for Production under the Local Rules absent permission

from the Court, which she did not seek.

## FACTS AND PROCEDURAL HISTORY

Plaintiff worked for two years as a Federal Career Intern at the U.S. Department of

Transportation's Volpe National Transportation Center ("Volpe Center") in Cambridge.  Her

employment ended on February 11, 2011.  Comp. ¶ 29.

Plaintiff filed her complaint on August 28, 2012.  Liberally read, her complaint alleged

three claims:  (a) that she was terminated on account of her race, gender, and/or national origin;

(b) that the Volpe Center failed to pursue a Cooperative Research and Development Agreement

("CRADA") with Worcester Polytechnic Institute ("WPI"), where Plaintiff was a graduate

student in aerospace engineering, on account of Plaintiff's race, gender, and/or national origin;

and (c) that Dr. Michael Geyer of the Volpe Center withheld a reference letter in retaliation for

Plaintiff's filing an administrative complaint of discrimination.

On April 29, 2013, this Court granted Defendant's motion to dismiss the first and third

claims.  DN 32 at 7, 11.  The Court declined to dismiss the CRADA claim, which is currently the

only pending claim.  Id. at 9.

On May 13, 2013, Plaintiff filed a motion to amend her complaint by adding a claim that

she suffered discrimination in a training program at the Volpe Center.  DN 34.  Specifically, in

paragraphs 40-48 of her proposed Amended Complaint, Plaintiff alleges that:  (a) while

employed at the Volpe Center, she "entered into a Training Program in Aircraft Wake

Turbulence with the Defendant"; (b) "Plaintiff's Master's Thesis research in Aircraft Wake

Turbulence is the Training Program provided by the Defendant"; (c) on February 10, 2011, the

day before Plaintiff's employment ended, Dr. Geyer "gave the Plaintiff permission to continue

her research … post employment"; (d) Plaintiff's participation in the training program was

involuntarily terminated on December 8, 2011; (e) the termination was motivated by

discrimination; and (f) the result is that Plaintiff "cannot graduate" from WPI.  DN 34-1, ¶¶ 40,

43, 48.

On May 14, 2013, Defendant filed his answer to the original complaint.  DN 35.

On May 16, 2013, Defendant filed an opposition to Plaintiff's motion to amend her complaint.  Defendant argued that the proposed new claim is futile for two reasons.  First, Plaintiff failed to exhaust her administrative remedies on the proposed new claim.  DN 36 at 4-5.  Second, the proposed new claim is not actionable under Title VII because it relates to Plaintiff's role as a graduate student, not her former employment at the Volpe Center.  Id. at 5-7.

The Court has not yet ruled on Plaintiff's motion to amend her complaint.  Therefore, the CRADA claim is currently the only pending claim.

Discovery closes on October 31, 2013.  A status conference is scheduled for November 7, 2013.

## DISCOVERY RELEVANT TO THE CRADA CLAIM

As noted above, currently Plaintiff's only claim is that that the Volpe Center failed to pursue a CRADA with WPI, where Plaintiff was a graduate student in aerospace engineering, on account of discrimination.[1]  Specifically, Plaintiff alleges that, when her employment was terminated, she asked one of her supervisors at the Volpe Center, Dr. Geyer, if, "in addition to losing her job … she has just lost her Graduate research and thus her academic career for her

---

[1] A CRADA is "any agreement between one or more Federal laboratories and one or more non-Federal parties [*e.g.*, a university or private industry] under which the Government, through its laboratories, provides personnel, services, facilities, equipment, intellectual property, or other resources with or without reimbursement (but not funds to non-Federal parties) and the non-Federal parties provide funds, personnel, services, facilities, equipment, intellectual property, or other resources toward the conduct of specified research or development efforts which are consistent with the missions of the laboratory."  15 U.S.C. § 3710a(d)(1).  Essentially, a CRADA allows a federal research lab, such as the Volpe Center, to work with a collaborator to share technical expertise and resources (including intellectual property) to improve, promote, or further a certain technological development or to solve a certain technological problem.  To enter into a CRADA, the Volpe Center must have approval from the U.S. Department of Transportation's Research and Innovative Technology Administration ("RITA") in Washington, D.C.  See http://www.rita.dot.gov/.

Master's Degree." Comp. ¶ 26. "Plaintiff cannot complete her degree and therefore cannot graduate with a degree from Grad school without completing her research. Losing the research would require the plaintiff to start over academically by finding another research project after two years of time invested in Aircraft wake turbulence research." Id. Plaintiff alleges that Dr. Geyer told "her no she had not just lost her research. She could continue with it and the Volpe Center could put a [CRADA] in place between [it] and … WPI." Id. ¶ 27. Plaintiff asserts that she had meetings and discussions with Dr. Geyer; another supervisor at the Volpe Center, Dr. Frank Wang; and Volpe Center attorney Felecia McBride, "to discuss the CRADA and what is required for it." Id. ¶ 28. Plaintiff claims that she prepared an initial Statement of Work ("SOW") for the CRADA, and gave it to Drs. Geyer and Wang, but the Volpe Center took no further action, and, hence, no CRADA between the Volpe Center and WPI was finalized. Id. ¶¶ 28, 30, 33-35. Plaintiff claims the Volpe Center decided not to pursue a CRADA with WPI because of her race, gender, and/or national origin. Id. ¶ 35.

The Defendant admits that Volpe Center staff had discussions with Plaintiff about the possibility of the Volpe Center proposing to WPI that the two entities enter into a CRADA under which the Volpe Center would share some of its confidential wake turbulence research data with WPI in exchange for some type of benefit to the Volpe Center. Answer (DN 35), ¶ 27. (The benefit could not be to Plaintiff; that would not be a CRADA.[2]) Attorney McBride explained to Plaintiff that, before McBride could even begin drafting a proposed CRADA, after which much more would be required, she first would need a draft technical SOW, among other things. Id. ¶ 28. Dr. Geyer instructed the Plaintiff to write the first draft of the SOW and to email it to Frank

---

[2] Plaintiff's assertion that "[t]he basis for the proposed CRADA between the Volpe Center and WPI is the Plaintiff's thesis" shows her utter misunderstanding of CRADAs. DN 42 at 11. Congress did not create the concept of CRADAs to benefit the Plaintiff. Congress created them to benefit federal research labs and to promote technological advancement by collaborators such as private industry and academia.

Wang, whom Dr. Geyer appointed as the technical point of contact for the potential CRADA.  <u>Id.</u>

Plaintiff did so.  <u>Id.</u> ¶ 30.  The Defendant further admits that Dr. Wang resisted the draft SOW

proposed by the Plaintiff, although Defendant denies that Dr. Wang's resistance had anything to

do with discrimination.  <u>Id.</u> ¶¶ 33, 35.  The Defendant admits that the process of potentially

proposing a CRADA between the Volpe Center and WPI ended early because Dr. Wang was

dissatisfied with Plaintiff's draft SOW.  The process never reached the stage of Attorney

McBride drafting a CRADA; sending a draft CRADA to WPI for its review; both sides revising

and finalizing the terms of CRADA; and obtaining signed approvals from both sides.

     Defendant's defenses to the CRADA claim include but are not limited to the following:

(1) the CRADA, of which Plaintiff presumably would have been a third-party beneficiary, was

too speculative to support a claim under Title VII (<u>see</u> DN 18 at 8); (2) the Volpe Center's

decision not to pursue CRADA discussions with WPI may have adversely affected Plaintiff's

pursuit of her master's degree thesis, but it was not an adverse employment action cognizable

under Title VII (<u>see</u> DN 36, at 5-7); and (3) discrimination was not the reason why the Volpe

Center declined to pursue CRADA discussions with WPI.

     When Defendant served Plaintiff with its Rule 26 automatic disclosures, it included 138

pages of documents.  These include all emails concerning the potential CRADA between the

Volpe Center and WPI, both intra-agency and post-employment emails with Plaintiff.

## ARGUMENT

     "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevance is the touchstone.  <u>See, e.g.</u>, <u>In re</u>

<u>Prograf Antitrust Litig.</u>, C.A. No. 11-md-02242-RWZ, 2013 WL 3334962, at *1 (D. Mass. June

21, 2013) (denying plaintiffs' motion to compel production of documents because plaintiffs had

failed to show their relevance).  In addition, "the court must limit the … extent of discovery … if it determines that … the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

**A.  The Court Should Deny Plaintiff's Motion to Compel with Regard to Interrogatory Nos. 1-2.**

Plaintiff's Interrogatories Nos. 1-2, and Defendant's responses, are:

1.  Clearly list and identify all previously planned, confirmed and upcoming dates, times, and specific locations, including a list of all persons in attendance, or persons expected to attend all Volpe Wake Turbulence Data Reviews from January 1st, 2012 to October 31st, 2013.

    <u>Response</u>:  Defendant objects to this request as being irrelevant to any claim or defense.

2.  List and identify, all meeting(s), event(s), conference(s), lunch date(s), including time(s) and location address(es) held within the state of Massachusetts on behave of or in association with the Volpe National Transportation Systems Center (Volpe Center) or the US Department of Transportation (USDOT) including its all of it subparts, including but not limited to the Federal Aviation Administration (FAA) and Research and Innovative Technology Administration (RITA) for which any of the following persons will be, or was in attendance, or is expected to attend for any duration of time from January 1st, 2013 to October 31st, 2013.

    a)  Jeffrey D. Crouch
    b)  Michael J. Czech
    c)  Donald P. Delisi
    d)  Charlotte Song
    e)  Jayne Rossetti
    f)  Paul Slaboch

    <u>Response</u>:  Defendant objects to this request as being irrelevant to any claim or defense.

The Defendant properly objected to these interrogatories on the grounds that the requested information is irrelevant to Plaintiff's CRADA claim or Defendant's defenses thereto.

Plaintiff argues that the requested information is relevant to "the potential contents of" the

possible CRADA.  DN 42 at 8.  But the potential contents of the CRADA are irrelevant.  The

Defendant does not dispute that, had Plaintiff's draft SOW been acceptable, and had Attorney

McBride drafted a proposed CRADA, and had the Volpe Center suggested the CRADA to WPI,

and had the parties agreed to final terms, and had the CRADA been approved and signed both by

WPI and by the Volpe Center and RITA, then Plaintiff would have benefited from the CRADA

in terms of having access to wake turbulence data that might have enabled her to complete her

master's thesis at WPI.  That is not in dispute.  The disputed issue is whether the Volpe Center

decided not to pursue a CRADA with WPI because of Plaintiff's race, gender, or national origin.

The information requested in Interrogatory Nos. 1-2 is not relevant to this issue.

### B.  The Court Should Deny Plaintiff's Motion to Compel with Regard to Interrogatory No. 3.

Plaintiff's Interrogatory No. 3 asks for information regarding Volpe Center contracts

containing or referring to SOWs.  Defendant answered the interrogatory in detail insofar as the

interrogatory concerns CRADAs:

> 3.  In a list, describe with great detail and specificity all of the agreements the Volpe Center has accepted and approved from January 1st, 2007 to July 1st, 2013, that either contained a statement of work or required a reference to a statement of work or required a reference to a statement of work (sow) in the agreement.  For each agreement include the following in the description:
>
> a) the agreement type,
> b) the customer type or vendor type,
> c) the RVT number(s) associated with the agreement,
> d) the frequency of contact between the Volpe Center's Point of Contact (POC) or a representative and the customer/vendor (POC) or any of their representatives.
> e) the duration of time it took each agreement to be turnaround/approved from initial contact concerning the agreement to the date it was finalized and signed.
> f) the date of initial contact concerning the agreement

g)  the date the agreement was finalized and signed.

<u>Response:</u>   To the extent that this interrogatory concerns any type of agreement other than a CRADA, Defendant objects that the request is irrelevant to any claim or defense.   To the extent that this interrogatory concerns CRADAs, Defendant responds as follows.

a)  Between January 1, 2007 and July 1, 2013, the Volpe Center entered into only two CRADAs, one with the Massachusetts Institute of Technology ("MIT") and the other with Rockwell Collins Inc. ("Rockwell Collins").

b)  Defendant objects to the terms "customer" and "vendor"; the Volpe Center enters into CRADAS with collaborators, not customers or vendors.   MIT is a university.   Rockwell Collins is a for-profit company.

c)  The RVT numbers associated with the MIT CRADA are 81 and 80. The RVT numbers associated with the Rockwell Collins CRADA are 75 and 70.

d)  Defendant is unable to identify with any specificity how many CRADA-related communications took place between the Volpe Center POCs and the collaborator POCs.

e)  For the MIT CRADA, approximately 14 months passed between the date when the statement of work was provided until the CRADA became effective.   For the Rockwell Collins CRADA, 78 days passed between the date when the statement of work was provided until the CRADA became effective.

f)  For the MIT CRADA, the initial contact occurred on December 22, 2006.   For the Rockwell Collins CRADA, the initial contact occurred on February 22, 2012.

g)  *Note:   Even after a CRADA is signed by the collaborator and the Director of the Volpe Center, it does not become effective until the earlier of (i) the date when the Administrator of the DOT's Research and Innovative Technology Administration ("RITA") takes action or (ii) day 31 after the Volpe Director signs the CRADA.*   The MIT CRADA was signed by MIT on May 21, 2012; the Volpe Director signed it on June 1, 2012; and the RITA Administrator concurred with the CRADA (and therefore the CRADA became effective) on June 27, 2012.   The Rockwell Collins CRADA was signed by Rockwell Collins on October 17, 2012; the Volpe Director signed it on October 22,

> 2012; and the RITA Administrator concurred with the CRADA (and
> therefore the CRADA became effective) on November 13, 2012.

As noted above, Defendant objected to producing the requested information to the extent it concerned contracts other than CRADAs.  This was and is an appropriate objection since Plaintiff's claim concerns a CRADA.  In her motion to compel, Plaintiff argues: "How the USDOT Volpe Center handles other agreements and interacts normally with other parties is directly relevant.  How the USDOT Volpe Center handles a Statement of work with respect to … other agreements is also relevant to this case.  It may lead to more discoverable information such as why the Defendant failed to complete the CRADA and shed light on how the defendant normally handles such agreements."  DN 42 at 9.  This is a stretch, to say the least.  In its response to Interrogatory No. 3, the Volpe Center identified the number of CRADAs it has entered into in the last six years, the identities of the collaborators on those CRADAs, and how long it took to finalize the CRADAs.  Information about other types of agreements, such as employment agreements, collective bargaining agreement, and procurement contracts, have no bearing on Plaintiff's CRADA claim.

**C.  The Court Should Deny Plaintiff's Motion to Compel with Regard to Interrogatory No. 4.**

Plaintiff's Interrogatory No. 4, and Defendant's response, are as follows:

> 4.  Describe with great detail and specificity for each Volpe Technical Center and per RVT number, from January 1st, 2000 to July 1st, 2013, per year and by quarter and per Volpe Technical Center and per RVT number:
>
> a)  For all agreements with a statement of work or that reference a statement of work, the average duration of time it took each type of agreement to be turnaround/approved from initial contact concerning the agreement to the date it was finalized and signed.
> b)  For all agreements without a statement of work, the average duration of time it took each type of agreement to be turnaround/approved

from initial contact concerning the agreement to the date it was finalized and signed.

<u>Response:</u>   To the extent that this interrogatory concerns any type of agreement other than a CRADA, Defendant objects that the request is irrelevant to any claim or defense.   Defendant further objects to this interrogatory as irrelevant and overbroad to the extent that it requests information predating 2007.

To the extent that this interrogatory concerns CRADAs entered into between January 1, 2007 and July 1, 2013, Defendant responds as follows:   Initial contact for the MIT CRADA occurred on December 22, 2006, and the CRADA became effective on June 27, 2012.   Initial contact for the Rockwell Collins CRADA occurred on February 22, 2012, and the CRADA became effective on November 13, 2012.

Defendant properly objected to producing information for contracts other than

CRADAs.  <u>See</u> discussion on Interrogatory No. 3, <u>supra</u>.  Defendant also properly objected to

producing information predating 2007.  Plaintiff worked at the Volpe Center for only two years,

2009-2011.  Plaintiff has not explained why information concerning all CRADAs entered into by

the Volpe Center during the seven-year period (2007-2013) that encompassed her employment at

the Center, as provided in response to Interrogatory Nos. 3 and 4, is insufficient.  <u>See</u> DN 42 at

10.

## D.  The Court Should Deny Plaintiff's Motion to Compel with Regard to Interrogatory No. 5.

Plaintiff's Interrogatory No. 5, and Defendant's response, are as follows:

5.  From January 1st, 2009 to July 1st, 2013, how many times did Mr. Michael Geyer, Mr. Frank Wang, or another representative of the Volpe Center other than the Plaintiff, have directly communicated with Prof. Germano Iannacchione or anyone else at Worcester Polytechnic Institute (WPI) concerning the Plaintiff, her thesis, putting an agreement of any type in place between the Volpe Center and WPI, or a CRADA. Identify all persons including contact information, titles, dates, times, locations, method of communication (in-person, phone, email, web-conference, etc.), topics and with great detail and specificity the details of what was discussed.

Response:  To the extent that this interrogatory concerns communications regarding anything other than the proposed CRADA between the Volpe Center and WPI, Defendant objects that the request is irrelevant to any claim or defense.

Frank Wang recalls no communications responsive to this interrogatory.

Michael Geyer recalls only one communication responsive to this interrogatory.  It was a telephone call in February 2011 that lasted about 30 minutes.  The call was between Dr. Geyer and Plaintiff, who were in Dr. Geyer's office at the Volpe Center, and Professor Iannacchione, who was at WPI.  Dr. Geyer does not recall discussing a CRADA per se, although it may have been mentioned.  The main topic of the conversation was the need to safeguard government-owned aircraft wake data, should some amount of such data be transferred to WPI under some form of agreement between the Volpe Center and WPI.  Dr. Geyer explained that, if some of that data were to be transferred, there would need to be protocols and mechanisms limiting access to the data to Plaintiff and Professor Iannacchione, and limiting any published findings derived from the data.  Professor Iannacchione expressed a general optimism that such arrangements could be made. However, specific protocols and mechanisms were not discussed.

Defendant is unaware of any other communications responsive to this interrogatory.

Defendant answered Interrogatory No. 5 to the extent it concerns communications between the Volpe Center and WPI about a potential CRADA between the two institutions.  This was proper since Plaintiff's only pending claim is her CRADA claim.  Defendant properly objected to the extent that Plaintiff requested communications between the Volpe Center and WPI concerning anything else.  Plaintiff's bare argument that communications concerning other issues "are relevant and are subject to discovery," DN 42 at 11, is undeveloped and should be deemed waived.  See King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

**E.  The Court Should Deny Plaintiff's Motion to Compel with Regard to Plaintiff's First Request for Production of Documents.**

In her First Request for Production, Plaintiff sought only one category of documents. The request and Defendant's response are:

> 1.  For all previously planned, confirmed and upcoming dates, times, and locations of Volpe Wake Turbulence Data Review meetings from January 1st, 2012 to October 31st, 2013, provide a complete and unredacted copy of each meeting's agenda.
>
> Response:  Defendant objects to this request as being irrelevant to any claim or defense.

Defendant's response was proper.  Defendant already produced to Plaintiff the only meeting agenda referencing the potential CRADA.  See Exhibit A (Sept. 15, 2011 meeting agenda referencing "Update on CRADA with WPI").  Wake turbulence data review meetings whose agendas did not include the potential CRADA simply are not relevant.

Plaintiff argues:  "If the Defendant continued to work on aspects of Plaintiff's Thesis or anything related to the proposed content of the CRADA, then it is likely that potential content of the CRADA either in whole or in part, directly or indirectly, would have been discussed at the Volpe Wake Turbulence Data Reviews.  It would show that the Defendant had no inten[t]ion of completing the CRADA with the Plaintiff."  DN 42 at 12.  This makes no sense.  First of all, as noted above, Defendant already produced the only meeting agenda referencing the potential CRADA.  Plaintiff should not be permitted to sift through a year and a half's worth of meeting agendas post-dating her employment just to see whether she thinks anything discussed at any of those meetings might have been relevant to her master's thesis.  That would be a pure fishing expedition.  Moreover, given that Plaintiff had already discovered by July 2011 that the Volpe Center allegedly had no intention of pursuing the CRADA, see Comp. ¶ 35, it is unclear why Plaintiff would have to show that the Volpe Center still had no such intention in 2012-2013.

**F.  The Court Should Deny Plaintiff's Motion to Compel with Regard to Plaintiff's Second Request for Production of Documents.**

In her Second Request for Production, Plaintiff sought four categories of documents.  The requests and Defendant's responses are:

1.  From January 1, 2009 to August 1, 2013, including pre-employment, employment, and post-employment timeframes, provide unredacted electronic copies all reports, publications, presentations, drafts, and documents that Paul Slaboch authored, helped or assisted on, or contributed to in any way that are related either directly or indirectly to the following:

    a)  San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
    b)  The topic of aircraft wakes over water vs. land.
    c)  The topic of aircraft wakes over water.
    d)  The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e)  The topics of aircraft wakes in marine or urban boundary layers.
    f)  San Francisco  weather.

    Response:    Defendant  objects  to  this  request  as  irrelevant,  unduly burdensome, and requiring the production of confidential research data.

2.  From January 1, 2009 to August 1, 2013, including pre-employment, employment, and post-employment timeframes, provide unredacted electronic copies of all emails and complete email conversations, and respective attachments that Paul Slaboch received, forwarded, sent or authored or contributed to in any way that are related either directly or indirectly to the following:

    a)  San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
    b)  The topic of aircraft wakes over water vs. land.
    c)  The topic of aircraft wakes over water.
    d)  The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e)  The topics of aircraft wakes in marine or urban boundary layers.
    f)  San Francisco  weather.

    Response:    Defendant  objects  to  this  request  as  irrelevant,  unduly burdensome, and requiring the production of confidential research data.

3. From January 1, 2009 to August 1, 2013, including pre-employment, employment, and post-employment timeframes, provide unredacted electronic copies of all emails, complete email conversations, and respective attachments that either discuss or reference Paul Slaboch in the subject or body of the email either directly, indirectly, or by another name or nickname that were either authored by, contributed to, sent or received by the following persons:

   a) Miles Bellman
   b) Michael Geyer
   c) Steven R. Lang
   d) Melanie Soares
   e) Frank Wang
   f) Hadi Wassaf

Response:  Defendant objects to this request as irrelevant and unduly burdensome.

4. Provide all non-email communication, in unredacted electronic format from January 1, 2009 to August 1, 2013, including pre-employment, employment, and post-employment timeframes that either discuss or reference Paul Slaboch either directly, indirectly, or by another name or nickname that were either authored by, contributed to, sent or received by the following persons:

   a)   Miles Bellman
   b)   Michael Geyer
   c)   Steven R. Lang
   d)   Melanie Soares
   e)   Frank Wang
   f)   Hadi Wassaf

Response:  Defendant objects to this request as irrelevant and unduly burdensome.

Defendant properly objected to these four requests on the grounds that the requested documents have nothing whatsoever to do with Plaintiff's claim that the Volpe Center decided not to pursue a CRADA with WPI because of discrimination against the Plaintiff.  Plaintiff argues that the documents "are directly related to the Plaintiff's thesis, and contain the specific topics the Plaintiff's thesis and thus the proposed CRADA [were] supposed to address."  DN 42 at 13.  The problem with this argument is that the content of Plaintiff's thesis, or even the content

of the potential CRADA, is not the subject of this lawsuit.  It does not matter whether Plaintiff

was studying wake turbulence or Roman architecture.  The issue is whether the Volpe Center

declined to pursue a CRADA with WPI – whatever its potential content might have been –

because of Plaintiff's race, national origin, and/or gender.  The issue is not whether Hadi Wassaf

(a person Plaintiff has not even identified) ever sent or received an email referencing Paul

Slaboch (another person Plaintiff has not even identified).

The requests are also unduly burdensome.  They would require the Defendant to review

4.5 years of emails and paper files, searching for:  (1) all documents that Paul Slaboch

contributed to "in any way" regarding various technical subject areas; (2) all emails that Mr.

Slaboch sent or received concerning various technical subject areas; (3) all emails referencing

Mr. Slaboch that were sent or received by any of six people, four of whom Plaintiff has even not

identified (the other two are Dr. Geyer and Dr. Wang); and (4) all "non-email communication"

(letters and memos, presumably) referencing Mr. Slaboch that were sent, received, or authored

by any of those same six people.  Plaintiff has made no attempt to explain why the Defendant

should spent countless hours searching through computer databases, file cabinets, desks, and

archived boxes to look for irrelevant documents and electronic files.

Finally, Plaintiff's complaint that the Defendant has not produced a privilege log

identifying the confidential documents withheld in response to request nos. 1-2, see DN 42 at 13-

14 (citing L.R. 34.1(E)), is misplaced.  A privilege log is required when a party withholds

otherwise responsive documents based on a claim of *privilege*.  Here, Defendants have objected

to producing documents in part because the requested documents contain *confidential research

data*.  If the Court were to order Defendant to produce documents in response to requests 1

and/or 2, the parties presumably could overcome the confidentiality issue by entering into a

confidentiality agreement and protective order.

### G. The Court Should Deny Plaintiff's Motion to Compel with Regard to Plaintiff's Third Request for Production of Documents.

In her Third Request for Production, Plaintiff sought six categories of documents.  In its

responses, Defendant included the following General Objection:

> Defendant objects to Plaintiff's Third Request for Production of Documents on the grounds that discovery is limited to "two (2) separate requests for production," unless the Court orders otherwise.  Local Rule 26.1(C).  *Please note that Defendant will not respond to any further document requests absent a Court Order directing it to do so.*

Defendant then provided the following responses:

1. Provide all communication, in unredacted electronic format from June 1, 2010 to August 1, 2013, that were either authored by, contributed to, sent or received by Miles Bellman including pre-employment, employment, and post-employment timeframes that either discuss or reference either directly or indirectly the following:

   a) San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
   b) The topic of aircraft wakes over water vs. land.
   c) The topic of aircraft wakes over water.
   d) The topic of aircraft wakes bouncing, rising, or detected again after falling.
   e) The topics of aircraft wakes in marine or urban boundary layers.
   f) San Francisco weather.

   Response:    Defendant objects to this request as irrelevant, unduly burdensome, and requiring the production of confidential research data.

2. Provide all communication, in unredacted electronic format from June 1, 2010 to August 1, 2013, that were either authored by, contributed to, sent or received by Michael Geyer including pre-employment, employment, and post-employment timeframes that either discuss or reference either directly or indirectly the following:

   a) San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
   b) The topic of aircraft wakes over water vs. land.

    c) The topic of aircraft wakes over water.
    d) The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e) The topics of aircraft wakes in marine or urban boundary layers.
    f) San Francisco weather.

<u>Response:</u>   Defendant objects to this request as irrelevant, unduly burdensome, and requiring the production of confidential research data.

3. Provide all communication, in unredacted electronic format from June 1, 2010 to August 1, 2013, that were either authored by, contributed to, sent or received by Steven R. Lang including while he was still employed by the Federal Aviation Administration (FAA), including pre-employment, employment, and post-employment timeframes that either discuss or reference either directly or indirectly the following:

    a) San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
    b) The topic of aircraft wakes over water vs. land.
    c) The topic of aircraft wakes over water.
    d) The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e) The topics of aircraft wakes in marine or urban boundary layers.
    f) San Francisco weather.

<u>Response:</u>   Defendant objects to this request as irrelevant, unduly burdensome, and requiring the production of confidential research data.

4. Provide all communication, in unredacted electronic format from June 1, 2010 to August 1, 2013, that were either authored by, contributed to, sent or received by Melanie Soares including pre-employment, employment, and post-employment timeframes that either discuss or reference either directly or indirectly the following:

    a) San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
    b) The topic of aircraft wakes over water vs. land.
    c) The topic of aircraft wakes over water.
    d) The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e) The topics of aircraft wakes in marine or urban boundary layers.
    f) San Francisco weather.

<u>Response:</u>   Defendant objects to this request as irrelevant, unduly burdensome, and requiring the production of confidential research data.

5.  Provide all communication, in unredacted electronic format from June 1, 2010 to August 1, 2013, that were either authored by, contributed to, sent or received by Frank Wang including pre-employment, employment, and post-employment timeframes that either discuss or reference either directly or indirectly the following:

    a) San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
    b) The topic of aircraft wakes over water vs. land.
    c) The topic of aircraft wakes over water.
    d) The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e) The topics of aircraft wakes in marine or urban boundary layers.
    f) San Francisco weather.

    <u>Response:</u>   Defendant objects to this request as irrelevant, unduly burdensome, and requiring the production of confidential research data.

6.  Provide all communication, in unredacted electronic format from June 1, 2010 to August 1, 2013, that were either authored by, contributed to, sent or received by Hadi Wassaf including pre-employment, employment, and post-employment timeframes that either discuss or reference either directly or indirectly the following:

    a) San Francisco, CA, or San Francisco International Airport also known as SFO or KSFO.
    b) The topic of aircraft wakes over water vs. land.
    c) The topic of aircraft wakes over water.
    d) The topic of aircraft wakes bouncing, rising, or detected again after falling.
    e) The topics of aircraft wakes in marine or urban boundary layers.
    f) San Francisco weather.

    <u>Response:</u>   Defendant objects to this request as irrelevant, unduly burdensome, and requiring the production of confidential research data.

Defendant properly objected to these requests for the same reasons that it objected to Plaintiff's Second Request for Production. First, the requested documents have nothing whatsoever to do with Plaintiff's claim that the Volpe Center decided not to pursue a CRADA with WPI because of discrimination against the Plaintiff. Second, the requests are unduly burdensome. They would require the Defendant to review 3 years of emails and paper files,

searching for all communications (electronic and paper) authored, sent, or received by Dr. Geyer, Dr. Wang, or any of four people Plaintiff has not identified (Miles Bellman, Steven R. Lang, Melanie Soares, and Hadi Wassaf).  Plaintiff has made no attempt to explain why the Defendant should spent countless hours searching through computer databases, file cabinets, desks, and archived boxes to look for these irrelevant documents and electronic files.  Finally, Plaintiff's request for a privilege log, see DN 42 at 16, is misplaced for the same reason that her request for a privilege log in response to her Second Request for Production is misplaced.

### H. The Court Should Deny Plaintiff's Motion to Compel with Regard to Plaintiff's Fourth Request for Production of Documents.

As noted above, in responding to Plaintiff's Third Request for Production, Defendant advised Plaintiff that discovery is limited to two separate requests for production unless the Court orders otherwise, see L.R. 26.1(C), and that Defendant would not respond to any further document requests absent a Court Order directing it to do so.  Instead of obtaining a Court Order, Plaintiff went ahead and served Defendant with a Fourth Request for Production.  Because Plaintiff had not obtained the Court's permission, Defendant properly refused to respond to the request.  However, defense counsel did advise Plaintiff by phone that Defendant has no documents responsive to request no. 1 (seeking a recording of the one telephone call that Dr. Geyer recalled having with WPI professor Germano Iannacchione, see response to Int. No. 5).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel should be denied.

Respectfully submitted,

RAY H. LAHOOD
Secretary of Transportation

By his attorney,

CARMEN M. ORTIZ
United States Attorney

By:  */s/ Christine J. Wichers*
Christine J. Wichers
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617) 748-3278
christine.wichers@usdoj.gov

Date:  October 1, 2013

## Certificate of Service

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on October 1, 2013.

*/s/ Christine J. Wichers*
Christine J. Wichers