UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11605-RWZ

ELIZABETH TYREE

v.

ANTHONY FOXX,[1] *Secretary,*
*U.S. Department of Transportation*

MEMORANDUM OF DECISION

September 8, 2014

ZOBEL, D.J.

Elizabeth Tyree, an engineer who appears *pro se*,[2] was enrolled in a master's degree program in physics at Worcester Polytechnic Institute ("WPI"). She also worked as a paid intern for two years at the Volpe Center, a part of the U.S. Department of Transportation ("USDOT"). One of her job duties was conducting research on aircraft wake turbulence. Tyree used that research in her efforts to complete her master's thesis. When her internship ended, Tyree and Volpe personnel discussed the possibility of entering into a Cooperative Research and Development Agreement ("CRADA") with WPI, which would allow Tyree to continue to collaborate with Volpe as she pursued her degree. Their discussions were ultimately unsuccessful, and Tyree

---

[1] The court substitutes Anthony Foxx, who succeeded Ray LaHood as U.S. Secretary of Transportation, as defendant. See Fed. R. Civ. P. 25(d).

[2] The court commends Tyree on her fine briefing and oral argument in this matter.

sees impropriety in Volpe's failure to provide her a CRADA.

She alleges two violations of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq*. First, Tyree, a black Hispanic woman, claims that Volpe personnel discriminated against her on the basis of race, sex, and/or national origin by intentionally withholding the CRADA. Id. § 2000e-16(a). Second, she claims that she participated in a post-employment training program at Volpe, which its personnel terminated because of her race, sex, and/or national origin. Id. § 2000e-2(d). Defendant moves for summary judgment. Docket # 58. After holding a hearing and carefully reviewing the facts in the light most favorable to Tyree, the motion is ALLOWED. See, e.g., Estate of Hevia v. Portrio Corp., 602 F.3d 34, 38 (1st Cir. 2010) (legal standard).

**I.    Background**

Tyree's internship was part of the Federal Career Internship Program. She began working on February 17, 2009. Her supervisors were Dr. Michael Geyer and Dr. Frank Wang, both of whom specialize in aircraft wake turbulence. Geyer managed the wake program at Volpe, and Wang was the team leader. Tyree was one of approximately ten people on the team.

In November 2010, Tyree received a negative performance review from Geyer and Wang. Tyree asked Geyer for an explanation. According to Tyree, Geyer replied that nobody had told him that Tyree was doing high quality work. Geyer went on to compare Tyree unfavorably to a male colleague. Wang compared her unfavorably to a different male colleague. Tyree noted that these male colleagues had different duties

and roles in the organization.

When Tyree's internship ended, she expressed her desire to continue her research. Geyer suggested a CRADA. On February 10, 2011, the day before Tyree's internship ended, she met with Geyer, Wang, and Felecia McBride, a Volpe lawyer, to discuss the matter. McBride explained that she could begin drafting a CRADA once she received a Statement of Work ("SOW"). This responsibility fell to Tyree and Wang.

Tyree emailed Wang a first draft of the SOW on February 16, 2011. On April 28, 2011, after some intervening communication, Wang suggested that Tyree use a particular statistical tool in her research, as reflected in the SOW. Tyree agreed that the statistical tool was useful but expressed dissatisfaction that the SOW was progressing so slowly.

In June 2011, Tyree emailed McBride. They scheduled a meeting between the two of them, Wang, and Geyer, on August 4, 2011. Meanwhile, discussions between Tyree and Wang continued, and although it is not altogether clear why, their relationship worsened. Tyree stated her belief that Wang was dragging his feet on the SOW by suggesting she use "synthetic" data rather than real aircraft data collected at San Francisco International Airport, and by not entering his proposed changes to her research plan into the SOW document. Wang suggested that, as a collaboration, a CRADA must be beneficial to Volpe as well as to Tyree, and his comments were intended to create those benefits.

Wang revised the SOW and emailed it to Tyree on July 17, 2011. Tyree did not respond to Wang's email or comment on Wang's revisions. The parties did not meet in

3

August, as scheduled. The SOW was never completed; for that reason, neither was the CRADA.

Tyree contacted Volpe's Equal Employment Opportunity ("EEO") counselor on August 10, 2011. She alleged that Volpe's continued resistance to execute a CRADA amounted to discrimination on the basis of sex. She requested $300,000 and a new point of contact for the CRADA. Volpe declined to provide her requested remedy and authorized Tyree to file an administrative complaint with USDOT. She did so. The complaint was dismissed. She then appealed to the Equal Employment Opportunity Commission's Office of Federal Operations, which likewise rejected her appeal. Then Tyree filed this suit.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id. at 248.

## III. Analysis

### A. Count I

In Count I, Tyree alleges that Volpe personnel discriminated against her on the basis of race, sex, and/or national origin by refusing to execute the CRADA. Defendant

moves for summary judgment on three grounds. First, the proposed CRADA is an educational benefit, not an employment benefit; Title VII protects former employees only from discriminatory adverse employment actions. Second, it is nothing more than speculation to conclude that, absent the alleged discrimination, Tyree would have received the CRADA and completed her master's thesis. And third, Tyree cannot show that Geyer and Wang were motived by improper animus. I need not consider defendant's first two arguments because its third, with which I agree, is fatal to Count I.

Title VII prohibits a federal employer from discriminating against an employee on the basis of that employee's race, sex, or national origin. 42 U.S.C. § 2000e-16(a). If a plaintiff-employee lacks evidence of direct discrimination, she may prove her case using the burden-shifting framework the Supreme Court first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Tyree has the initial burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). The burden then returns to Volpe to produce evidence that the adverse employment action it took was "'for a legitimate, nondiscriminatory reason.'" Id. (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If Volpe carries this burden, then Tyree must show that the reason Volpe proffered was pretextual; in other words, that improper animus, rather than the proffered reason, was the true motivation for the employment decision. Id. at 508 (quoting Burdine, 450 U.S. at 256). Tyree retains the ultimate burden of persuasion that she has been the victim of intentional discrimination. Id. (quoting Burdine, 450 U.S. at 256).

5

Assuming Tyree can establish a prima facie case of discrimination, Volpe can articulate a legitimate, non-discriminatory reason: making the SOW more "sellable" to Volpe. As Wang wrote in an email to Tyree, his feedback was

> intended to ensure that [Tyree's] thesis effort is on the right track and is able to produce a piece of work that is usable by Volpe, as well as being consistent with the true spirit of the CRADA, which emphasizes sharing resources and analysis efforts. And from the Volpe legal and administrative perspectives, it is important for me to "sell it" in terms of "what does Volpe really get out of the CRADA?"

Docket # 61-10. If believed, this evidence "would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr., 509 U.S. at 506. Volpe has provided a legitimate, nondiscriminatory reason.

The burden then shifts back to Tyree to show pretext, and that is where Count I fails. Tyree must offer "specific facts that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover up the employer's true motive." Ponte v. Steelcase, Inc., 741 F.3d 310, 323 (1st Cir. 2014). But when asked in her deposition to identify all evidence of supposed discrimination, Tyree named the following four things:

- An engineer named Steve Mackey did not attend a meeting because he stayed home to care for his sick child. Another person, Bob Rudis, said, "Where's his wife?"

- Wang gave Geyer negative feedback about Tyree, which she felt was unfair.

- Tyree was compared unfavorably to two male colleagues who have different roles on the team.

- Geyer changed the performance review of a male colleague, but did not change Tyree's review.

6

Docket # 61-1 at 193-97. Tyree confirmed that she never heard Geyer or Wang make a discriminatory comment. Id. at 198. None of the evidence she cites relates to the CRADA. And much of that evidence rests simply on Tyree's own belief that Geyer and Wang had a discriminatory motive. But "belief is not enough to show pretext or animus." Roman v. Potter, 604 F.3d 34, 40 (1st Cir. 2010).

Indeed, it was Tyree herself who stopped the CRADA negotiations. After Wang incorporated his edits into the SOW, he remarked via email that the draft "reads more like a SOW" and "fits much better with the language a CRADA would need." Docket # 61-13. Tyree did not respond. Her frustration with the sluggish pace of the negotiations and personality mismatch with Wang is understandable, but it does not suffice to show discrimination. Considering the totality of the circumstances in the light most favorable to her, no reasonable jury could conclude that defendant's reason for withholding the CRADA was a deceitful ruse for discriminatory animus. Summary judgment is proper on Count I.

**B.     Count II**

When Tyree's internship ended, Geyer and Wang allowed her to keep three types of materials to help her pursue her degree: Rapid Update Cycle ("RUC") data, weather data, and RUC processing software. Docket # 61-1 at 189-90. Tyree appears to allege that Volpe's approval of her retention of these materials amounted to a federal "training program,"[3] which ended when Volpe refused to provide the $300,000 and new

---

[3]It is not altogether clear whether Tyree believes the training program followed or was co-extensive with her internship.

CRADA point of contact that Tyree requested in her communications with the EEO counselor. Id. at 187-89. She claims Volpe terminated this program because of her race, sex, and/or national origin. See 42 U.S.C. § 2000e-2(d).[4] Defendant supports its motion for summary judgment with two arguments: (1) the training program is an educational benefit, and (2) Tyree failed to exhaust her administrative remedies on this claim.

I need not consider either of these arguments because Count II, as a Title VII discriminatory treatment claim, is subject to the same analysis as Count I and fails for the same reasons. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (explaining that the McDonnell Douglas burden-shifting analysis applies to Title VII discrimination cases).

**IV. Conclusion**

Defendant's motion for summary judgment (Docket # 58) is ALLOWED. Judgment may be entered for defendant.

| | |
|---|---|
|    September 8, 2014    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |

---

[4]The statute provides,

> It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

42 U.S.C. § 2000e-2(d).